**Sabino CONCEPCION, a/k/a Roberto Valdez, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 81 Civ. 4878–CLB.**

United States District Court, S.D. New York.

June 2, 1982.

Sabino Concepcion, pro se.

John S. Martin, U.S. Atty., S.D.N.Y., New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On August 6, 1981, Sabino Concepcion, a/k/a Roberto Valdez, formerly a federal prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. On February 23, 1982, the United States Attorney filed an affidavit and a memorandum of law in opposition to the petition. On April 12, 1982, petitioner filed a "Traverse to Answer", in which he requested, alternatively, a writ of *coram nobis.* This Court has also received and considered the relevant papers and transcripts in petitioner's federal criminal case.

In this action, petitioner challenges a 1966 federal narcotics conviction in this district because of a claimed failure to comply with the requirements of Rule 11, F.R.Cr.P. Petitioner pleaded guilty and has served his

sentence. Petitioner was subsequently arrested and convicted by the State of New York on charges of robbery and assault. Because of his prior federal conviction, petitioner was given an enhanced sentence by the State of New York as a predicate felony offender. Petitioner now challenges his federal conviction, seeking to eliminate his recidivist status. He now claims that his plea did not comply with Rule 11 because a factual basis for the plea was not established. Petitioner also makes the conclusory claim that he did not knowingly and voluntarily plead guilty.

## I.

The undisputed facts are as follows. In 1961 petitioner was arrested on federal narcotics charges and subsequently pleaded guilty. He was sentenced, and was released from federal custody.

A year and a half later, petitioner was again arrested on federal narcotics charges. On November 9, 1966, petitioner appeared before then Judge Tyler of this Court with the aid of a Spanish interpreter. The Court appointed counsel to represent petitioner and then entertained petitioner's plea of guilty to the entire indictment. The transcript of the hearing reads, in relevant part as follows:

"THE CLERK: Mr. Concepcion, do you understand the three charges in this indictment?

THE DEFENDANT: Yes, sir.

THE CLERK: And how do you plead?

THE DEFENDANT: I would like to plead guilty.

THE CLERK: To all three counts?

THE DEFENDANT: Yes, sir.

BY THE COURT:

Mr. Concepcion, I understand from Mr. Moldow, [defense counsel] who is a very capable and experienced lawyer that he has gone through this rather carefully and in detail with you, but nevertheless I would like to ask you some questions which will be in effect repetitive, but I think I must: First of all, do you understand that if I accept your plea of guilty

to these three counts, this means that you would be sentenced under the law to a term of at least ten years, because the Judge who will sentence you will have no other choice. The minimum would be ten years, and the maximum could be forty years.

Now, theoretically that could be true on each of these three counts. I am not saying that it will be true, but it could be true. And I want you to understand that as carefully as you can.

THE DEFENDANT: I understand, sir.

THE COURT: You understand that?

THE DEFENDANT: Yes, sir.

Q Do you understand also that no one can make you any promises today as to what will happen to you in the form of a sentence; no one can do that, and no one, I assume, has tried to do that—but even if they tried to, no one could make you any promises as to what the sentence might be.

Specifically, for example, for instance, no one can assure you now that the sentence will be the minimum of ten years. It might very well be more; do you understand that?

A Yes, sir.

Q And nevertheless you are willing to plead guilty to each of these three counts?

A Yes, sir.

Q Has anybody made any threats against you in order to force you to come in here today and plead guilty to these counts?

No, sir, I told him I was an addict. I was in the hospital and I couldn't help myself, and I have recommendations from the hospital.

Q As I understand it then, you are coming in here of your own free will to plead guilty?

A Yes, I am.

MR. MOLDOW: I might say, your Honor, that the defendant has indicated to me that he wants hospitalization as part of the disposition of this matter, and I told him that on the day of sentence which is the appropriate time, I will ask the Court for a recommendation to Lexington, Kentucky.

BY THE COURT:

Q How old are you?

A Twenty-eight.

Q Now, there is no doubt in your mind that what you are doing here is admitting these three transactions in heroin on the days in question. In other words, you are admitting here in open court, if I accept your plea of guilty, that on the 9th day of May, the 13th day of May, and the 21st day of May of this year, you participated in a transaction of either selling or facilitating the sale or transportation of a quantity of heroin; do you understand that you would be admitting it?

A Yes, sir.

Q And is that your intention to do that here today?

A Yes, sir.

Q To admit that you participated in these sales or transaction of heroin?

A Yes, sir, I did.

Q And you want to admit those transactions without any reservation; is that so?

A Yes, sir.

Q Do you feel in pretty good health here this afternoon?

A Yes, sir.

THE COURT: Then I will accept the plea of guilt[y] with regard to each of these three counts." (Ex. G to Pollard Aff. docketed Feb. 23, 1982.)

Sentencing was scheduled for November 15, 1966. (Ex. H to Pollard Aff.)

At the time of sentence, the following proceedings took place:

"MR. MOLDOW [defense counsel]: Your Honor, I think we could start out this matter by reminding the Court that this is the defendant who understands English quite substantially, yet we have the interpreter standing by just so that if there is ever any question in the defendant's mind about something he will have someone to turn to.

MR. LUTTINGER [Assistant United States Attorney]: Your Honor, at this time the government would like to file an information charging this defendant with having previously violated the Federal narcotics law.

THE CLERK: Sabino Concepcion, this information charges that Robert M. Morgenthau, the United States Attorney, accuses the above named defendant, who was convicted on the 15th day of November, 1966, before the Hon. Harold R. Tyler, a Judge of this Court, for violation of Title 21, of the United States Code, committed on or after the 19th day of July, [1966], of having previously been convicted as hereinbelow described; the defendant, on or about the 17th day of August, 1961, in the Southern District of New York, was duly convicted of selling narcotics in violation of Title 21, United States Code, Sections 173 and 174.

Do you admit or deny that you are the person previously convicted as charged with this information?

THE DEFENDANT: I admit, sir.

[Attorney] Moldow addressed the Court, [off the record], on behalf of defendant.

THE COURT: Mr. Sabino Concepcion, you heard this, and is it your desire that I recommend hospitalization at Lexington, Kentucky?

THE DEFENDANT: Yes, sir, it is.

THE COURT: Is there anything else you care to say to me before I impose sentence?

THE DEFENDANT: Yes, your Honor, I would like to speak with my wife and my kids and my brother.

THE COURT: I will ask the marshal to permit a brief visit downstairs after we are through here. (Exhibit I to Pollard Aff.)

The Court then imposed sentence.

Petitioner was released on federal parole in December, 1972. On April 15, 1973, petitioner was arrested and later pled guilty to a New York State charge of Possession of a Dangerous Weapon. He was sentenced to one year in prison. At the expiration of this sentence, petitioner was remanded to federal custody for violating his parole. Petitioner was released from federal custody in July, 1976.

In January, 1980, petitioner was arrested under the name Roberto Valdez on New York State charges of first degree assault and robbery. Petitioner was convicted by a jury and sentenced as a second felony offender with the predicate felony being his 1966 narcotics conviction.[1]

On the first degree robbery charge, as a second felony offender, petitioner faced a maximum sentence of at least nine years and not more than twenty-five years and a minimum sentence of one-half of the maximum sentence. N.Y. Penal L. § 70.06(3)(b) & (4)(b) (Supp. 1981–82). If petitioner had not been a second felony offender his maximum state sentence would have been at least three years and not more than twenty-five years and the minimum sentence would have been not less than one year and up to one-third of the maximum. N.Y. Penal L. § 70.00(2)(b) & (3)(b) (1975 & Supp. 1981–82).

On the first degree assault charge, as a second felony offender, petitioner faced a maximum sentence of at least six years and not more than fifteen years and a minimum sentence of one-half of the maximum sentence. N.Y. Penal L. § 70.06(3)(c) & (4)(b) (Supp. 1981–82). If petitioner had not been a second felony offender his maximum sentence would have been not more than fifteen years and the minimum sentence would have been not less than one year and up to one-third of the maximum. N.Y. Penal L. § 70.00(2)(c) & (3)(b) (1975 and Supp. 1981–82).

Petitioner was sentenced to concurrent terms of imprisonment of 12½ to 25 years on the robbery charge and 7½ to 15 years on the assault charge.

1. The Court is not aware of any reason why, should petitioner be successful in overturning the conviction at issue herein, his predicate felony status could not rest upon his 1961 federal conviction.

## II.

Petitioner commenced this action to vacate his 1966 federal conviction, presumably, as a first step toward seeking a reduction of his state sentence. Petitioner claims that jurisdiction exists under 28 U.S.C. § 2255 because, "although the effective period of the herein complained of Federal sentence expired on 12/8/78 . . . [petitioner] is still under constructive custody of that sentence by virtue of the mandatory enhancement of his current state sentence . . ." Petition at ¶ 3. Alternatively, "[p]etitioner respectfully submits that it [this Court] has error *coram nobis* jurisdiction under 28 U.S.C. § 1615, and that under the 'liberally construing' mandate of *Haines v. Kerner,* [404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)] it [the Court] might, at its discretion, so amend the application [the petition]." (Petitioner's "Traverse to Answer", docketed April 12, 1982, at ¶ 6.)

Petitioner's motion to have his petition deemed amended so as to seek a writ of *coram nobis* in addition to seeking a writ of habeas corpus under 28 U.S.C. § 2255 is granted.

## III.

■ By his own admission, petitioner is no longer in federal custody, his sentence having been fully served some time ago. The writ of habeas corpus is only available to one who is "in custody". 28 U.S.C. §§ 2241(c); 2255. This requirement of custody has been equated with significant restraints on liberty, such as parole, *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963), or release on the individual's own recognizance, *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Petitioner contends that his status as a second felony offender, which arises from his federal conviction, constitutes custody within the meaning of the federal habeas corpus statutes.

Petitioner did not file his petition while he was incarcerated pursuant to the conviction under attack, as occurred in *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), nor was petitioner serving a consecutive or successive sentence as in *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Rather, petitioner is seeking relief from his status as a recidivist under state law which exists by virtue of his prior federal conviction.

■ Petitioner is no longer "in custody" relative to his 1966 federal conviction, having completely served the required sentence, and federal habeas corpus relief is therefore inappropriate. *United States Ex Rel. Myers v. Smith,* 444 F.2d 75 (2d Cir. 1971). See *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Hill v. Johnson,* 539 F.2d 439 (5th Cir.1976). Insofar as the petition seeks habeas corpus relief, such relief is denied.

## IV.

Petitioner's principal claim is that the trial judge did not establish a factual basis for the guilty plea.

"Petitioner submits that the herein complained of conviction was had in violation of the due process clause of the Fifth Amendment of the Constitution in that the plea of guilty was accepted by the court where there was no factual basis for its acceptance; where there was no finding as to Petitioner's conduct in relation to the charge laid against him by the Government as constituting the criminal behavior contemplated by the statute; where Petitioner did not possess the required scienter to be accused in the premise; and where there was an improper finding of fact in that *nisi prius* neglected to ascertain whether Petitioner understood the nature of the charge and the law in relation to the facts." (Petition at ¶ 4.)

Petitioner also presents the conclusory claim that his plea of guilty was not entered knowingly and voluntarily.

"Petitioner now avers that he did not, and that as a result of the foregoing his plea was neither voluntary nor intelligently entered, and that, accordingly, the plea was Constitutionally unacceptable." (Petition at ¶ 5.)

■ It is evident from the record previously quoted that the trial court inquired

into the factual basis for the charges to which petitioner pled guilty and obtained unambiguous admissions from the petitioner; quoted previously in this memorandum and order, *supra*, p. 768.

These admissions were sufficient under Rule 11 as it then existed and are, indeed, sufficient as the rule presently exists.

## V.

Petitioner's present collateral attack upon his guilty plea must fail. As the Supreme Court stated in *United States v. Timmereck,* 441 U.S. 780, 783–85, 99 S.Ct. 2085, 2087–2088, 60 L.Ed.2d 634 (1979):

"a formal violation of Rule 11 ... is neither constitutional nor jurisdictional: the 1966 amendment to Rule 11 obviously could not amend the Constitution or limit the jurisdiction of the federal courts. Nor can any claim reasonably be made that the error here resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.' Respondent['s] ... only claim is of a technical violation of the Rule. That claim could have been raised on direct appeal, see *McCarthy v. United States,* 394 U.S. 459 [89 S.Ct. 1166, 22 L.Ed.2d 418] [1969], but was not. And there is no basis here for allowing collateral attack 'to do the service for an appeal.' *Sunal v. Large,* 332 U.S. 174, 178 [67 S.Ct. 1588, 1590, 91 L.Ed. 1982].

\* \* \* \* \* \*

'[S]uch collateral relief is not available when all that is shown is a failure to comply with the formal requirements of the Rule.' [*Hill v. United States,* ] 368 U.S. [424,] 429 [82 S.Ct. 468, 471, 7 L.Ed.2d 417]."

Petitioner does not contest his guilt or claim that a manifest injustice was done. He merely argues, as was argued in *Timmereck,* that the Court failed to comply fully with Rule 11, as it currently exists, by establishing a factual basis for the plea. Under *Timmereck,* petitioner is foreclosed from attacking his conviction collaterally because of a "technical" violation of Rule 11.

Petitioner's attack upon the validity of his guilty plea should have been made upon direct appeal over fifteen years ago. *Sunal v. Large,* 332 U.S. 174, 178–79, 67 S.Ct. 1588, 1590, 1591, 91 L.Ed. 1982 (1974); *United States v. Sobell,* 314 F.2d 314, 322–23 (2d Cir.1963). As the Supreme Court said in *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976):

"The writ of habeas corpus [28 U.S.C. § 2254] and its federal counterpart, 28 U.S.C. § 2255, 'will not be allowed to do the service of an appeal.' *Sunal v. Large,* 332 U.S. 174, 178 [67 S.Ct. 1588, 1590, 91 L.Ed. 1982] (1947). For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. *Id.,* at 178–79 [67 S.Ct. at 1590–91] *Davis v. United States,* 417 U.S. 333, 345–346, and n. 15 [94 S.Ct. 2298, 2304–2305 and n. 15, 41 L.Ed.2d 109] (1974). Even those nonconstitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the alleged error constituted ' "a fundamental defect which inherently results in a complete miscarriage of justice," ' *id.,* at 346 [94 S.Ct. at 2305], quoting *Hill v. United States,* 368 U.S. 424, 428 [82 S.Ct. 468, 471, 7 L.Ed.2d 417] (1962)."

Petitioner's claims of error are, as has already been shown, meritless. The claim as presented does *not* rise to a constitutional level. There was no "fundamental defect" here resulting in a "miscarriage of justice."

## VI.

Because there has not been a "fundamental" error, a writ of *coram nobis* is inappropriate in this case. As the Court said in *United States v. Morgan,* 346 U.S. at 511, 74 S.Ct. at 252:

"Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [coram nobis] only under circumstances compelling such action to achieve justice."

*See United States v. Gross,* 614 F.2d 365, 368 (3d Cir.1980), *cert. denied,* 447 U.S. 925,

100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980); *United States v. Dellinger,* 657 F.2d 140, 143–44 (7th Cir.1981); *United States v. Johnson,* 269 F.Supp. 767 (S.D.N.Y.1967).

█ No constitutional or substantial right belonging to petitioner was violated by the manner in which his plea was taken. Petitioner was represented by competent counsel, an interpreter was available if he did not understand any of the proceedings, his own attorney admitted that petitioner "understands [sic] English quite substantially" (Ex. I to Pollard Aff.), and petitioner admitted "without any reservation" that he committed the offenses charged. (Ex. G to Pollard Aff.)

The writ of *coram nobis* is denied.

█ The Court declines to grant leave to appeal *in forma pauperis,* or to grant a certificate of probable cause to appeal because the claims lack merit and present no novel issue. Accordingly, any appeal could not be taken in good faith.

The Clerk shall enter a final judgment that all relief shall be denied.

So Ordered.