Alfonso BELL, Petitioner,

v.

Janet RENO, Respondent.

Docket No. 99–4138

United States Court of Appeals,
Second Circuit.

Argued March 14, 1999

Decided May 31, 2000

David Stern, The Legal Aid Society, New York, N.Y. (Scott A. Rosenberg, Helaine Barnett, Janet Sabel, of counsel), for Petitioner Alfonso Bell.

Meredith E. Kotler, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Diogenes P. Kekatos, Gideon A. Schor, Assistant United States Attorneys, of counsel), for Respondent Janet Reno.

Before: McLAUGHLIN, KATZMANN and JOHN R. GIBSON,[1] Circuit Judges.

KATZMANN, Circuit Judge:

Alfonso Bell petitions for review of a Board of Immigration Appeals ("BIA") order dismissing his appeal from the decision of an Immigration Judge ("IJ") finding him deportable under INA § 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony after entry into the United States. For the reasons stated below, we dismiss the petition for lack of jurisdiction.

### BACKGROUND

This petition requires us to interpret whether § 602 of the Immigration Act of 1990 ("IMMAct"), Pub.L. No. 101–649, 104 Stat. 4978, 5077–82 (Nov. 29, 1990), permits the deportation of an alien charged after March 1, 1991 with deportability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), for an aggravated felony conviction that occurred before the enactment of the Anti–Drug Abuse Act of 1988 ("ADAA"), Pub.L. No. 100–690, 102 Stat. 4181 (Nov. 18, 1988). The BIA answered this question in the affirmative, a conclusion that appellant Alfonso Bell now challenges. Although we disagree with the BIA's interpretation of IMMAct § 602(c), we conclude that Bell is deportable under INA § 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony after entry into the United States, based on IMMAct § 602(d). We therefore dismiss the petition for lack of jurisdiction.

### 1. *Factual Background*

Bell is a 41–year old native of Panama who was admitted to the United States as a lawful permanent resident in 1965 and has lived here since that time. In 1985, Bell pleaded guilty in the Supreme Court of New York, Kings County, to first-degree sodomy charges stemming from sexual acts he performed on three minors. His sentence of five to fifteen years imprisonment was affirmed by the Appellate Division. *See People v. Bell,* 133 A.D.2d 554, 519 N.Y.S.2d 286 (2d Dep't), *leave to ap-*

---

1. The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

*peal denied,* 70 N.Y.2d 798, 522 N.Y.S.2d 115, 516 N.E.2d 1228 (1987) (table).

## 2. *Statutory Background*

### A. The Anti–Drug Abuse Act of 1988

The term "aggravated felony" entered the immigration law lexicon with the enactment of the ADAA on November 18, 1988. ADAA § 7342 created a new provision, INA § 101(a)(43), 8 U.S.C. § 1101(a)(43) (1988), that defined "aggravated felony" to include murder, any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2), any illicit trafficking in firearms or destructive devices as defined in 18 U.S.C. § 921, or any attempt or conspiracy to commit such acts. *See* 102 Stat. 4469–70. In addition, ADAA § 7344(a) created an aggravated felony deportation ground at INA § 241(a)(4)(B), 8 U.S.C. § 1251(a)(4)(B) (1988). ADAA § 7344(b) provided that the ground applied "to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony." 102 Stat. 4471 (1988). In other words, pursuant to the ADAA, an alien was subject under INA § 241(a)(4)(B) to deportation as an aggravated felon only if convicted after November 1, 1988.

### B. The Immigration Act of 1990

In 1990, Congress enacted IMMAct. *See* 104 Stat. 4978. The House–Senate Conference Committee Report declared that IMMAct:

> provide[d] for a *comprehensive revision* of all the existing grounds for exclusion and deportation, *including* the repeal of outmoded grounds, the expansion of waivers for certain grounds, the substantial revision of security and foreign policy grounds, and *the consolidation of related grounds in order to make the law more rational and easy to understand.*

H.R. Conf. Rep. No. 101–955 at 128 (1990) (emphasis added), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793. IMMAct § 501(a) broadened INA § 101(a)(43)'s definition of "aggravated felony," *see* 104 Stat. 5048 (1990), and IMMAct § 602, entitled "Revision of Grounds for Deportation," restructured INA § 241's deportation ground scheme by consolidating similar deportable offenses. *See, e.g.,* IMMAct § 602(a)(2)(A) (general crimes including aggravated felonies); § 602(a)(2)(B) (controlled substances); § 602(a)(2)(C) (firearm offenses); *See also* 104 Stat. 5077–80 (1990). As part of this consolidation, the aggravated felony deportation ground formerly set forth in INA § 241(a)(4)(B) by the ADAA was redesignated by IMMAct § 602(a) as INA § 241(a)(2)(A)(iii). *See* 104 Stat. 5077, 5080 (1990). The redesignation did not change the text of the ground, which stated:

> Any alien who is convicted of an aggravated felony at any time after entry is deportable.

*See* INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) (1990).

Section 602(d) of IMMAct set forth the effective date of § 602 as a whole:

> EFFECTIVE DATE.—The amendments made by [§ 602] ... shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991.

*See* 104 Stat. 5082 (1990).

Finally, § 602(c) provided:

> SAVINGS PROVISION.—Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1)

any such alien entered the United States before the date of enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

*See* 104 Stat. 5081–82 (1990).

C. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, Title III–B, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRIRA") amended INA § 101(a)(43)'s definition of "aggravated felony" once again, broadening it to include, among other things, "sexual abuse of a minor." *See* IIRIRA § 321(a), 110 Stat. 3009–627—28 (1996). The terms of the expanded definition apply retroactively. *See* IIRIRA § 321(b), 110 Stat. 3009–628 (1996). In addition, IIRIRA § 305(a)(2) redesignated INA § 241 as INA § 237, *see* 110 Stat. 3009–597—98; accordingly, the aggravated felony deportation ground previously set forth at INA § 241(a)(2)(A)(iii) is now found at INA § 237(a)(2)(A)(iii). *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996).

3. *Procedural Background*

The INS commenced removal proceedings against Bell in February 1998, charging that he was deportable under INA § 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony after entry into the United States. At his removal hearing, Bell argued that he was not deportable because his conviction pre-dated the ADAA and Congress had never repealed ADAA § 7344(b)'s directive that the aggravated felony ground be applied prospectively. In an oral decision rendered October 15, 1998, the Immigration Judge ("IJ") rejected this argument, construing it as a constitutional challenge which he was not allowed to consider. The IJ also reasoned that, to the extent the argument was not a constitutional challenge, prior precedent foreclosed its acceptance.

Bell's appeal of the IJ's decision was dismissed by the Board of Immigration Appeals ("BIA") in a *per curiam* order dated August 6, 1999. The order relied upon the BIA's divided *en banc* decision in *Matter of Lettman,* Interim Decision 3370 at *1, 1998 WL 811588 (BIA Nov. 5, 1998), where the majority concluded that the prospective temporal limitation of ADAA § 7344(b) did not survive the enactment of IMMAct § 602. Thus, the BIA found that Bell was deportable under INA § 237(a)(2)(A)(iii) despite the fact that his sodomy conviction pre-dated the ADAA. This petition for review followed.

DISCUSSION

■ As an initial matter, we must determine whether we have jurisdiction to consider Bell's petition. In the wake of IIRIRA, INA § 242 does not allow us to review any final removal order against an alien who is deportable under, among other provisions, INA § 237(a)(2)(A)(iii). *See* 8 U.S.C. § 1252(a)(2)(C) (Supp.1996). This jurisdictional bar is predicated, of course, upon two jurisdictional facts: (1) whether the petitioner is an alien; and (2) whether he or she is deportable under one of the enumerated offenses. *See id.* We have jurisdiction to determine whether this jurisdictional bar applies, and we may thus review whether Bell satisfies these jurisdictional facts. *See Lewis v. INS,* 194 F.3d 539, 542 (4th Cir.1999) ("Because our jurisdiction turns on the presence, or lack thereof, of these two facts, we have jurisdiction to review them."); *Lettman v. Reno,* 168 F.3d 463, 464–65 (11th Cir.1999), *vacated in part on other grounds, Lettman v. Reno,* 185 F.3d 1216 (11th Cir.1999); *Hall v. INS,* 167 F.3d 852, 854–55 (4th Cir.1999); *Okoro v. INS,* 125 F.3d 920, 925 n. 10 (5th Cir.1997); *Yang v. INS,* 109 F.3d 1185, 1192 (7th Cir.), *cert. denied,* 522 U.S. 1027, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).

Because Bell concedes that he is an alien, the only jurisdictional fact for us to review is whether his aggravated felony conviction renders him deportable. This requires us to consider Bell's substantive argument, which is that the prospective temporal limitation on aggravated felony deportations set forth in ADAA § 7344(b) was not affected by the enactment of IMMAct § 602. If Bell is correct, then he is not deportable because his aggravated felony conviction pre-dates the ADAA, and we may exercise jurisdiction and reverse the order of the BIA. However, if IMMAct § 602 superseded ADAA § 7344(b), Bell is indeed deportable under INA § 237(a)(2)(A)(iii) and we must dismiss his petition for lack of jurisdiction. We now undertake to determine whether the jurisdictional bar of INA § 242 applies in this case.

■■ Under the now familiar test of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), when we examine an agency's interpretation of a statute it administers, we ask first whether "the intent of Congress is clear" as to "the precise question at issue." If, by "employing traditional tools of statutory construction," *id.* at 843 n. 9, 104 S.Ct. 2778, we determine that Congress's intent is clear, "that is the end of the matter." *Id.* at 842, 104 S.Ct. 2778. However, "if the statute is silent or ambiguous with respect to the specific issue," we then ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. We must affirm the agency's construction of a statute that Congress charges the agency with enforcing as long as that interpretation is reasonable. *See id.* The Supreme Court has held "that the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication....'" *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (reinforcing *INS v. Cardoza–*

*Fonseca*, 480 U.S. 421, 448–49, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

■ A seeming consensus exists among all bodies that have considered the issue that Congress's intent as to the temporal effect of IMMAct § 602(c) is not clear. The BIA's majority opinion in *Matter of Lettman* "acknowledge[d] from the outset that the second sentence of section 602(c) is difficult to decipher, even after considerable examination." *Matter of Lettman*, Interim Decision 3370 at *16–*17. The dissent agreed, calling § 602(c) "an ambiguous section of the statute." *Id.* at *52 (Rosenberg, Board Member, dissenting). The Eleventh Circuit implicitly held as much by recently deferring to the *Matter of Lettman* majority after reaching the second prong of the *Chevron* test and concluding that the BIA's construction of ADAA § 602(c) was a reasonable interpretation of the statute. *See Lettman v. Reno*, 207 F.3d 1368, 1371–72 (11th Cir. 2000). Similarly, the only other Circuit to consider § 602(c) in the context of the aggravated felony deportation ground stated: "After thoroughly considering the interplay between the[ ] two sentences [of § 602(c) ], we cannot conclude that congressional intent is clear and unequivocal here." *Lewis v. INS*, 194 F.3d 539, 545 (4th Cir.1999). We join the consensus. Section 602(c) is an ambiguous provision susceptible to multiple interpretations, none of which make complete sense in the context of the statutory scheme in effect at that time. Both Bell and the government make thoughtful arguments in support of their conflicting interpretations, which we detail below.

Bell contends that, as a matter of plain language, the prospective temporal limitation set forth in ADAA § 7344(b) was preserved by IMMAct § 602(c). As noted, § 602(c) stated as follows:

SAVINGS PROVISION.—Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an of-

fense referred to in paragraph (15), (16), (17), or (18) of *section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act,* shall be considered to remain so deportable. Except as otherwise specifically provided in *such section* and subsection (d), the provisions of *such section, as amended by this section,* shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

(emphasis added). Bell reads the phrase "such section" in the second sentence of § 602(c) to refer back to "section 241(a) of the [INA], as in effect before the date of enactment of [IMMAct]"—that is, to pre-IMMAct INA § 241(a)—in the prior sentence. Reading § 602(c) in this way arguably preserves the prospective temporal limitation of ADAA § 7344(b) and, if so, would appear to prohibit Bell's deportation. The government, on the other hand, declares that "such section" refers to post-IMMAct INA § 241(a)—in other words, according to the government the phrases "such section" and "such section, as amended by this section" in the second sentence of § 602(c) mean the same thing.

■■■■■ Bell asserts that the government's interpretation of "such section" is contrary to basic rules of grammar. According to Bell, if "such section" refers to post-IMMAct INA § 241(a), then the phrase "as amended by this section" is reduced to mere surplusage. It is a well-known canon of statutory construction that, in general, a statute should not be construed so as to render a word or clause inoperative. *See Department of Revenue of Oregon v. ACF Indus., Inc.,* 510 U.S. 332, 340–41, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994); *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Local No. 550,* 167 F.3d 764, 768 (2d Cir.1999). Bell also

points to the fact that the antecedent of the phrase "such section" is the phrase "section 241(a) of the [INA], as in effect before the date of enactment of [IMMAct]." As a general matter, "qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote." *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975); *cf.* William Strunk, Jr. and E.B. White, *The Elements of Style,* 29–30 (3d ed.1979) (noting that a relative pronoun refers to the phrase of the clause immediately preceding it). In addition, Bell argues that because the phrase "such section" appears in the same sentence as the phrase "such section, as amended by this section," the difference in wording must be understood as deliberate on Congress's part. Finally, he claims that his interpretation of § 602(c) is confirmed by its title of "Savings Provision." It is well established that the title of a statute or section is an indication of its meaning. *See INS v. National Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991).

Moving beyond the text, Bell points to two opinions of the INS General Counsel that comport with his interpretation of § 602(c). Both opinions were issued after the enactment of IMMAct. The first, dated February 1991 and entitled " 'Aggravated Felony': Applicability to Convictions Prior to November 18, 1988," asked whether the INA's aggravated felony deportation ground "applies to convictions entered before [the ADAA's enactment on] November 18, 1988," and answered that question in the negative. Office of the General Counsel, Legal Opinion 91–25 (Feb. 21, 1991). In August 1992, the General Counsel released a second opinion captioned "OVERVIEW: Immigration Consequences of Aggravated Felony Conviction," which stated that "No conviction for an aggravated felony occurring prior to November 18, 1988, can serve as the basis for deportation under Section 241(a)(2)(A)(iii) of the [INA]." Office of the

General Counsel, Legal Opinion 92–49 (Aug. 20, 1992). Bell views the fact that Congress did not amend § 602(c) after the issuance of these opinions as an indication that the General Counsel's interpretation was correct.

Bell also points to the BIA's post-IM-MAct decision in *Matter of A–A*, 20 I. & N. Dec. 492, 497, 1992 WL 195810 (1992), in which the BIA stated in *dicta* that:

> as enacted by section 7344(a) of the [ADAA], ... section 241(a)(4)(B) of the [INA] ... renders deportable any alien "convicted of an aggravated felony at any time after entry." Congress explicitly stated that this deportation ground would only be prospectively applied to an alien "convicted, on or after the date of the enactment of [the ADAA], of an aggravated felony."

Bell contends that this *dicta* is an indication that, as of 1992, the BIA understood the prospective temporal limitation of ADAA § 7344(b) to have survived the 1990 enactment of IMMAct.

Bell's arguments are ably made, but the same can be said of the government's contentions. Indeed, the government argues convincingly that Bell's interpretation of § 602(c) may lead to absurd results. As the BIA majority observed in *Matter of Lettman*, "there would be no point in enacting a new statutory scheme if the intent was to keep the former version of the law in control whenever there was a difference between the old and the new." *Matter of Lettman*, Interim Decision 3370 at *22. Yet that would largely be the impact of adopting Bell's construction. Section

602(c) states that, except as provided in "such section," the amendments made by IMMAct apply to all aliens described in § 602(a) "notwithstanding that ... *the facts*, by reason of which an alien is described in [§ 602(a)], occurred before the date of the enactment of [IMMAct]." (emphasis added). According to the government, if, as Bell claims, "such section" refers to pre-IMMAct INA § 241(a), then any pre-IMMAct INA § 241(a) provision that relates to "the facts" rendering an alien subject to deportation and that differs from post-IMMAct INA § 241(a), would trump the post-IMMAct version.

For example, prior to IMMAct, the alien smuggling deportation ground codified at INA § 241(a)(13) provided that a person who "knowingly and *for gain*" encouraged or aided alien smuggling was deportable. 8 U.S.C. § 1251(a)(13) (1988) (emphasis added). IMMAct § 602(a) removed the "for gain" requirement and recodified the ground at INA § 241(a)(1)(E); thus, after IMMAct any alien who knowingly encouraged or aided alien smuggling was deportable regardless of whether that action was taken for gain. *See* 8 U.S.C. § 1251(a)(1)(E) (Supp. II 1990). As noted by the BIA majority in *Matter of Lettman*, under Bell's interpretation of § 602(c) an alien who knowingly—but not for gain— aided alien smuggling could argue that pre-IMMAct INA § 241(a) "otherwise specifically provided" with regard to the smuggling ("the facts") rendering him subject to deportation that such smuggling must be "for gain," and that therefore he was not deportable.[2] *Matter of Lettman*, Interim Decision 3370 at *23 n. 9.

---

2. Bell argues that the government is incorrect on this point and draws a distinction between the alien smuggling and aggravated felony deportation grounds. As noted, IMMAct substantively amended the alien smuggling ground by removing the "for gain" requirement. According to Bell, the IMMAct amendments did not "substantively amend" the aggravated felony ground because the text of the ground was kept identical and the ground was merely "redesignated" as a different subsection of the INA. Bell contends that § 602(c) saved the pre-IMMAct language only

of those provisions unamended by IMMAct, and that the pre-IMMAct language of provisions "substantively amended" by IMMAct (such as the alien smuggling deportation ground) was not saved because it was rendered obsolete. However, as we explain later in this opinion, we believe that the redesignation of the aggravated felony ground constituted an "amendment" within the meaning of that term in § 602. Moreover, Bell is unable to anchor his proposed distinction in the text of § 602(c). Nothing in § 602(c) indicates

The government also points to caselaw addressing the effect of § 602(c) on the prospective temporal limitation of the pre-IMMAct INA's firearms deportation ground. *See* INA § 241(a)(14) (1988), 8 U.S.C. § 1251(a)(14) (1983). ADAA § 7348(b) provided that the firearm deportation ground would apply prospectively; indeed, the operative language of § 7348(b) rendering the ground applicable only to convictions occurring "on or after the date of enactment of this Act" was identical to that of § 7344(b). *See* 102 Stat. 4473 (1988). To date, four Circuits have concluded that IMMAct § 602 eliminated ADAA § 7348(b)'s prospective temporal limitation, allowing the deportation of aliens under the firearms ground based upon pre-ADAA convictions. *See Hamama v. INS,* 78 F.3d 233, 236 (6th Cir.1996) ("the [IMMAct] specifically authorizes application of its provisions to all aliens, 'notwithstanding that . . . the facts, by reason of which an alien is [deportable] . . . , occurred before the date of the enactment of this Act.' ") (internal citation omitted); *Lopez–Amaro v. INS,* 25 F.3d 986, 988 (11th Cir.1994) ("we conclude that [the post-IMMAct firearms ground] displaces [the pre-IMMAct firearms ground] and the [pre-IMMAct] effective date restrictions . . . no longer apply."), *cert. denied,* 513 U.S. 1146, 115 S.Ct. 1093, 130 L.Ed.2d 1062 (1995); *United States v. Yacoubian,* 24 F.3d 1, 7 (9th Cir.1994) (under IMMAct § 602 alien was "rendered deportable when previously . . . he would not have been deportable based upon any of his convictions."); *Chow v. INS,* 12 F.3d 34, 37 (5th Cir.1993) (holding that IMMAct "completely supersedes all former versions of legislation dealing with deportation for firearm offenses.").[3]

After examining § 602(c) in great detail and considering the parties' arguments, the only firm conclusion we are able to draw is that the provision is ambiguous.

Accordingly, we turn to the second prong of *Chevron,* under which we ask whether the BIA's decision in this case, which relied on its interpretation of § 602(c) in *Matter of Lettman,* "is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. The Eleventh and Fourth Circuits, respectively, have answered this question in the affirmative. *See Lettman,* 207 F.3d at 1370–71, 1372 (deferring under *Chevron* to the BIA majority in *Matter of Lettman*); *Lewis,* 194 F.3d at 546 ("[W]e find the [BIA's] interpretation of . . . section [602(c) ] to be reasonable, and we defer to it. *See Chevron,* 467 U.S. at 844, 104 S.Ct. 2778.").

■■■ . We disagree. In our view, the BIA's interpretation of § 602(c) is not sustainable because it runs afoul of the longstanding presumption against the retroactive application of ambiguous statutory provisions. In *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court stated that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." The Court held in *Landgraf* that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280, 114 S.Ct. 1483. If Congress has not, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute would have retroactive effect, "our traditional pre-

that it should be read in different ways depending on whether the deportation ground at issue was "substantively amended" or "redesignated."

**3.** Bell attempts to distinguish these cases with the alleged distinction between substantively amended and redesignated deportation grounds discussed in footnote 2 of this opinion. As noted therein, we are not persuaded.

sumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

■ The BIA majority in *Matter of Lettman* did not conduct an analysis under *Landgraf.* Had it done so, it would have been compelled to conclude that § 602(c) cannot be construed to apply to convictions that pre-date the ADAA. There is little dispute that, as both the majority and dissent acknowledged, § 602(c) is ambiguous. In addition, it seems clear to us that § 602(c) as construed by the BIA has "retroactive effect" because it "increase[s] [Bell's] liability for past conduct." Because a "clear Congressional intent" that IMMAct § 602(c) does not save the prospective temporal limitation of ADAA § 7344(b) cannot be discerned, *Landgraf* compels the conclusion that ADAA § 7344(b) was not trumped—at least by IMMAct § 602(c). An agency's interpretation of a statutory provision is not reasonable when it ignores an established rule of statutory construction set forth by the Supreme Court. Thus, we cannot defer to the BIA's conclusion in Bell's case because it was based upon the interpretation of § 602(c) contained in *Matter of Lettman.*[4]

■ However, although we reject the BIA's construction of § 602(c), we agree with the agency's ultimate conclusion based upon our interpretation of § 602's "Effective Date" provision set forth at § 602(d). As noted, § 602(d) plainly provides:

> EFFECTIVE DATE.—The amendments made by [§ 602] ... shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991.

Section 602(a)'s redesignation of the aggravated felony ground from INA § 241(a)(4)(B) to INA § 241(a)(2)(A)(iii) is an "amendment[ ]" within the meaning of § 602(d). Indeed, § 602(a), entitled "Revised Grounds for Deportation," begins by stating: "Subsection (a) of [INA] section 241 ... is *amended* to read as follows ...," 104 Stat. 5077 (emphasis added), and goes on to make that redesignation.[5] *See id.* at 5077, 5079–80. The redesignation was part of IMMAct's wholesale amendment of pre-IMMAct INA § 241, and as previously noted Bell is unable to provide a textual basis for his suggested distinction between the "substantively amended" and "redesignated" provisions of that section. The clear import of the text is corroborated by the legislative history quoted at page 88 of this opinion.

Because we see no evidence that Congress made a distinction in IMMAct between "substantively amended" and "redesignated" provisions, we conclude that § 602(d) sets forth the effective date of the post-IMMAct aggravated felony ground, INA § 241(a)(2)(A)(iii). Section 602(d) thus rendered ADAA § 7344(b), the effective date of the pre-IMMAct aggravated felony ground set forth at INA § 241(a)(4)(B), obsolete. Accordingly, because Bell was given notice of his deportation proceeding after March 1, 1991, he is subject to deportation under INA § 237(a)(2)(A)(iii) (as INA § 241(a)(2)(A)(iii) is now designated pursuant to IRRIRA § 305(a)(2)) as an "alien who [was] convicted of an aggravated felony at any time after entry."

Bell argues that § 602(d) does not serve as an independent effective date provision. His contention requires us to once again turn to the language of § 602(c) which, as noted earlier, states:

> SAVINGS PROVISION.—Notwithstanding the amendments made by this

---

4. There is no indication that a *Landgraf* argument was considered by the Fourth and Eleventh Circuits in *Lewis* and *Lettman.*

5. We note the inconsistency between, on the one hand, Bell's argument emphasizing the significance of the fact that § 602(c) is entitled "Savings Provision," and on the other, his argument that § 602(a), entitled "Revised Grounds for Deportation" and beginning with the statement that it renders all of INA § 241 "amended," did not amend that section's aggravated felony deportation ground.

section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and *subsection (d)*, the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is·described in such subsection, occurred before the date of the enactment of this Act.

(emphasis added). According to Bell, "subsection (d)" refers to IMMAct § 602(d) and, as a result, § 602(d) works in tandem with pre-IMMAct INA § 241(a) (the provision allegedly referred to by § 602(c)'s phrase "such section"). If so, the argument goes, then even those aliens who receive notice of their deportation proceedings after March 1, 1991, and are thus deportable under the plain "Effective Date" language of § 602(d), can be deported only if not otherwise specifically provided in the pre-IMMAct INA § 241(a) provisions that IMMAct § 602 was enacted solely to amend.

We disagree. In our view, the phrase "subsection (d)" in § 602(c) refers not to IMMAct § 602(d), but to pre-IMMAct INA § 241(d), which read as follows:

Except as otherwise specifically provided in this section [INA § 241], the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated in subsection (a), notwithstanding (1) that any such alien entered the United States prior to the date of enactment of this Act, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act.

8 U.S.C. § 1251(d) (1982). Obviously, the language of pre-IMMAct INA § 241(d) closely parallels that of IMMAct § 602(c). Indeed, in the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. No. 102–232, 105 Stat. 1733 (Dec. 12, 1991) (the "1991 Act"), Congress. went on to delete pre-IMMAct INA § 241(d). Section 307(k) of the 1991 Act stated in relevant part:

Effective as if included in section 602(b) of [IMMAct], section 241 of the INA is amended–

(1) by striking *subsection (d)* . . . .

105 Stat. 1756 (emphasis added). The House Committee Report notes that "subsection (d)" was struck because it was "redundant with 602(c) of IMMAct." [6] H. Rep. No. 102–383, at 9 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1362, 1372, 1380.[7] An examination of § 602(c) leads to the conclusion that the only "subsection (d)" to which § 307(k) of the 1991 Act and the accompanying House Committee Report could sensibly apply, as it is indeed redundant with § 602(c), is pre-IMMAct INA § 241(d). Thus, in our view § 602(c)'s reference to "subsection (d)" is a reference to

---

**6.** Although we do not rely on retrospective legislative history, we note with regard to Bell's alleged distinction between "substantively amended" and "redesignated" provisions of IMMAct that the House Committee Report accompanying the 1991 Act virtually tracked the language of the IMMAct Conference Committee Report, stating that:

The [IMMAct] substantially revised the immigration law of the United States. In fact, the Act constituted the most comprehensive re-write of immigration law in 66 years. Every major area of the law, with the one exception of refugee matters, was amended. H. Rep. No. 102–383, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1362, 1372.

**7.** We note that the House Committee Report misidentified its reference to § 307(k) of the 1991 Act as a reference to "Subsection (j)." H. Rep. No. 102–383, at 9 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1362, 1372, 1380.

INA § 241(d). Moreover, § 602(c)'s references to IMMAct or its provisions are prefaced with the adjective "this"—for example, the phrases "this Act" or "this section." Had Congress intended that "subsection (d)" refer to IMMAct § 602(d) rather than INA § 241(d), it would have used some variant of the phrase "subsection (d) of *this* section."

Finally, the reference to "subsection (d)" appears in the following clause: "Except as otherwise specifically provided in *such section* and subsection (d), the provisions of *such section*, as amended by this section ...." (emphasis added). As discussed earlier, the phrase "such section" refers to either the pre-IMMAct or post-IMMAct version of INA § 241(a). Because references to INA § 241(d) bookend the phrase "subsection (d)," that phrase obviously does not refer to a provision of IMMAct.[8]

Accordingly, § 602(d) stands on its own as an independent effective date provision for the amendments made by § 602, including § 602(a)'s redesignation of the aggravated felony deportation ground. ADAA § 7344(b) does not survive this provision. Thus, Bell is deportable under INA § 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony after entry into the United States. Such an interpretation we believe to be faithful to the thrust of the legislative purpose in enacting the IMMAct.

### CONCLUSION

We have considered the parties remaining arguments and find them without merit. Because Bell is deportable as an alien convicted of an aggravated felony, we lack jurisdiction and must therefore dismiss the petition.

---

8. It could be argued that since "subsection (d)" refers to pre-IMMAct INA § 241(d), then, as Bell contends, the phrase "such section" may refer to pre-IMMAct INA § 241(a). We have considered this, but conclude that the phrase "such section" in § 602(c) remains ambiguous in light of the government's convincing arguments and the caselaw supporting the government's interpretation of the provision.