**Gregory GELMAN, Petitioner,**

v.

**John ASHCROFT, Respondent.**

**Docket No. 01–4093.**

United States Court of Appeals, Second Circuit.

Argued: July 17, 2002.

Decided: July 26, 2002.

Dorothy J. Aronovich (Mark S. Cheffo, on the brief; Beverly A. Farrell, of counsel) New York, NY, for Petitioner.

Michael M. Krauss, Assistant United States Attorney (Kathy S. Marks, Assistant United States Attorney, of counsel; Gideon A. Schor, Assistant United States Attorney, of counsel; James B. Comey, United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Respondent.

Before: CABRANES, STRAUB, and SOTOMAYOR, Circuit Judges.

PER CURIAM.

**I.**

Petitioner Gelman seeks review of a decision of the Board of Immigration Appeals ("BIA") upholding the decision of an immigration judge finding that Gelman, who was convicted in May 1988 of first-degree arson, was deportable as an alien convicted of an aggravated felony at any time after entry, pursuant to section 602 of the Immigration Act of 1990 ("IMMAct"), Pub.L. No. 101–649, 104 Stat. 4978, 5077–82 (Nov. 29, 1990), and ordering Gelman removed from the United States. We remand this matter to the BIA to consider in the first instance the impact of *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), on the retroactive application of IMMAct § 602 in the instant case.

**II.**

As we observed in *Bell v. Reno*, 218 F.3d 86, 89 (2d Cir.2000), "[i]n the wake of [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") ], [the Immigration and Nationality Act ("INA") ] § 242 does not allow us to review any final removal order against an alien who is deportable under, among other provisions, INA § 237(a)(2)(A)(iii)." *Bell*, 218 F.3d at 89 (citing 8 U.S.C. § 1252(a)(2)(C)). In the instant case, this jurisdictional bar is predicated in part upon whether Gelman is deportable under one of the enumerated offenses in INA § 237(a)(2)(A)(iii). *See Bell*, 218 F.3d at 89. Thus, as an initial matter, "[w]e have jurisdiction to determine whether this jurisdictional bar applies, and we may thus review whether [Gelman] satisfies the[ requisite] jurisdictional facts." *Id.; see also Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir.2001) ("Our authority to address such 'jurisdictional facts' stems not from Congress'[s] creation of a particular remedy, but rather from the inherent jurisdiction of Article III federal courts to determine their jurisdiction.").

As with the petitioner in *Bell*, our jurisdictional analysis requires us to consider whether Gelman's aggravated felony conviction renders him deportable, which, in turn, depends upon whether IMMAct § 602 operates retroactively. *See* 218 F.3d at 90. In *Bell*, we observed that "[t]his [analysis] requires us to consider [the petitioner's] substantive argument, which is that the prospective temporal limitation on aggravated felony deportations set forth in [the Anti Drug Abuse Act of 1988 ("ADAA")] § 7344(b) was not affected by the enactment of IMMAct § 602." 218 F.3d at 90. Thus, the answer to the retroactivity question arguably controls our jurisdictional analysis. *See id.* (noting need to consider petitioner's substantive argu-

ment about temporal limitation of IMMAct to answer jurisdictional question of whether petitioner's aggravated felony conviction rendered him deportable).

We note that although remand in the instant case serves the dual purpose of (1) informing our analysis of whether we have jurisdiction to consider Gelman's petition and (2) giving the BIA an opportunity to consider whether, under *St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, the IMMAct operates retroactively, this fact does not transform our remand for the purpose of resolving the jurisdictional question into an acceptance of jurisdiction over the merits of the appeal. *See Kuhali*, 266 F.3d at 100–01 ("[T]o say that a court possesses the authority to ascertain its jurisdiction over a matter is not tantamount to saying that the legislature has designated the court as a forum for resolution on the merits of those issues that happen to underlie the jurisdictional inquiry."). To the contrary, remand for consideration of the retroactivity issue by the BIA is entirely appropriate under our "jurisdiction to determine whether th[e] jurisdictional bar applies," *Bell*, 218 F.3d at 89, and does not constitute taking jurisdiction for purposes of a decision on the merits of the case. *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3536, at 535 (2d ed. 1984) (" 'Jurisdiction to determine jurisdiction' refers to the power of a court to determine whether it has jurisdiction over the parties to and the subject matter of a suit.").

In *Arango–Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir.1994), we declined to address an ineffective assistance of counsel claim based on a failure to present evidence "until after the BIA has an opportunity to consider it" on the ground that "for prudential reasons, ineffectiveness claims should be decided by the BIA in the first instance, [as] this 'will avoid any premature interference with the agency's processes and, in addition to affording the parties and courts the benefit of the agency's expertise, it will compile a record which is adequate for judicial review.' " *Id.* (quoting *Castaneda–Suarez v. INS*, 993 F.2d 142, 145 (7th Cir.1993) (one set of internal quotation marks omitted)); *see also Esposito v. INS*, 987 F.2d 108, 112 (2d Cir.1993) (remanding to BIA for consideration in the first instance of two legal issues upon which it had not previously ruled). We believe that the same prudential considerations apply in the instant case as well, where *St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, which was decided June 25, 2001, post-dates the decision of the BIA on May 17, 2001 that is the subject of this appeal. Since the BIA has never had the opportunity to consider whether, under *St. Cyr*, IMMAct § 602 operates retroactively, we "refrain from deciding [the claim] until after the BIA has an opportunity to consider it" so as to "avoid any premature interference with the agency's processes and, in addition to affording the parties and courts the benefit of the agency's expertise, [permit a] compil[ation of the] record which is adequate for judicial review." *Arango–Aradondo*, 13 F.3d at 614 (internal quotation marks omitted).[1]

---

1. The dissent suggests that simply deciding the substantive issue in this case without first remanding to the BIA for consideration *in the first instance* of the impact of *St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, on the retroactive application of IMMAct § 602 is somehow the more "prudential" approach, *post* at [7]—indeed, the dissent ascribes to the majority a lack of "respect for the federal courts' status as courts of limited jurisdiction," *post* at 154. We disagree and deny this unwarranted ascription. In remanding, we are doing nothing more than following a routine procedure for addressing an issue that

## III.

Accordingly, the judgment of the BIA is hereby vacated and the cause is remanded for consideration in the first instance of the impact of *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, on the retroactive application of IMMAct § 602 in the instant case.

SOTOMAYOR, Circuit Judge, dissenting:

In vacating the removal order of the Board of Immigration Appeals ("BIA") and remanding, the majority has, in my view, acted unwisely as a prudential matter. Moreover, it is far from clear to me that we have the power to remand without first determining our jurisdiction. I therefore respectfully dissent.

As the majority explains, the BIA determined that petitioner Gelman was deportable as an aggravated felon under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). The BIA relied solely on our decision in *Bell v. Reno*, 218 F.3d 86 (2d Cir.2000), in which we held that the aggravated felony deportation ground of INA § 237 was applicable to any alien who had been convicted of a crime falling within the current definition of "aggravated felony," regardless of whether the conviction pre-dated the first enactment of the ground in the Anti Drug Abuse Act of 1988 ("ADAA"). On appeal, the petitioner concedes that *Bell* is dispositive of his petition if it remains good law. He asserts, however, that *Bell* has been fatally undercut by

has not received consideration by the initial decision-maker, whether it is a district court or an administrative agency like the BIA. We see no reason to abandon this cautious and unremarkable method of proceeding in the instant case. The fact that this case will require consideration of Second Circuit precedent in light of recent Supreme Court case law—*i.e.*, whether *Bell*, 218 F.3d 86, survived *St Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (and whether we answered this question already in *Kuhali*, 266 F.3d 93)— does not warrant depriving the BIA of an opportunity to have the first chance to consider its own legal determinations in light of new legal authority. Were the tribunal of first instance a district court, rather than the BIA, we would almost invariably refrain from immediately interfering and readily accord the district court the courtesy of reconsideration in the first instance. Simply stated, the BIA should have an opportunity, in light of new legal authority, (1) to construe a statute that it enforces and (2) to reconsider its prior determination in this case.

The dissent asserts that we do not cite cases to support remand to the BIA "in the face of questionable jurisdiction" to order this remand. *Post* at 154. However, our reasoning and citations throughout the opinion clearly explain the legal basis for our jurisdiction to remand this case as part of our inquiry into whether we in fact have jurisdiction over Gel-

man's petition. The dissent's disagreement with that analysis, and its characterization of that analysis as "questionable jurisdiction," does not, by virtue of its articulation, render our jurisdiction "questionable." Moreover, as the discussion in our opinion makes clear, *Arango–Aradondo*, 13 F.3d at 614, and *Esposito*, 987 F.2d at 112, are cited in support of our conclusion that remand to the BIA is appropriate to allow the BIA an opportunity to consider in the first instance legal matters that it has not addressed. Contrary to the dissent's suggestion in its footnote three then, and as our discussion makes plain, these cases are not cited as examples of cases in which this Court has remanded to the BIA as part of a jurisdictional inquiry.

Finally, the dissent observes that "[t]he government ... did not request that we remand so that the BIA could consider the effect of *St. Cyr*, and when asked at oral argument, counsel for the government specifically denied any desire for us to do so (as did counsel for petitioner)." *Post* at **[10]**. However, at the outset of its argument, the government stated that it agreed with Gelman that since the BIA in this case relied on *Bell* expressly in its decision, "the Court's direction [of the case] to the BIA would be the *most helpful*" and further stated that "if the Court deems it more prudent to go to the BIA first, then that is *entirely appropriate* as well." (Emphases added).

the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and that Congress has not clearly specified that the aggravated felony deportation ground should apply retrospectively to aliens, like the petitioner, whose convictions pre-dated the ADAA.[1] The government, in turn, asserts that not only does *Bell* survive *St. Cyr*, but that we have held as much in *Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir.2001).

As the majority also correctly notes, and as both parties concede, we have no jurisdiction to review Gelman's petition if he is "an alien who is removable by reason of having committed" an aggravated felony. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C). Thus, as we held in *Bell*, our jurisdictional inquiry is identical to our inquiry into petitioner's substantive claim. Simply put, if we have no jurisdiction, we must dismiss the petition; if we *do* have jurisdiction, we have simultaneously answered the merits question and must vacate the removal order.[2]

The majority's choice of a third option—vacating and remanding for determination of the retroactivity issue—stands, in my view, on shaky ground. We of course have the jurisdiction to determine our jurisdiction, including any factual or legal issues on which our jurisdiction turns; I thus agree with the majority's opinion in this respect, as far as it goes. There is, therefore, no question that we have the power to proceed directly to the jurisdictional question (and, simultaneously, the merits). *See Bell*, 218 F.3d at 89–90. Where the

majority and I part company is that I am not sure that our power to determine jurisdictional issues extends to vacating an otherwise valid removal order for the purpose of remanding to the BIA. While we may "conduct appropriate proceedings" in examining our jurisdiction, *see In re United States Catholic Conference*, 824 F.2d 156, 162 (2d Cir.1987), *rev'd on other grounds sub nom. United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988), I am inclined to think that a fair respect for the federal courts' status as courts of limited jurisdiction requires that what is "appropriate" is only what is reasonably *necessary*—which remanding to the BIA certainly is not. *Cf. United States v. Shipp*, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906) (holding that court's authority to issue orders pending a jurisdictional determination arise "from the necessity of the case"). The majority's failure to cite a single case in which we have taken similar action in the face of questionable jurisdiction, while of course not dispositive, further strengthens my doubts as to the propriety of the majority's disposition in this case.[3]

Faced with a choice between answering the question of our jurisdiction, which is clearly within our power, and remanding to the BIA, our power to do which is highly doubtful, only the strongest of prudential concerns would lead me to choose the latter over the former. It is with respect to these prudential concerns that I have the sharpest disagreement with the

---

1. Petitioner does not contest the BIA's holding that the crime for which he was convicted, arson in the first degree, qualifies as an "aggravated felony" under INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).

2. The aggravated felony ground was the only one charged by the INS as the basis for petitioner's removal.

3. In both cases cited by the majority as instances of remand to the BIA, *see ante* at 152, we specifically considered and satisfied ourselves of our jurisdiction over the petition for review. *See Arango–Aradondo v. INS*, 13 F.3d 610, 612 (2d Cir.1994); *Esposito v. INS*, 987 F.2d 108, 110–11 (2d Cir.1993).

majority. Not only are there no strong reasons for remanding, the justification for doing so is practically nonexistent.

First, the question on which our jurisdiction turns is whether the aggravated felony deportation ground of § 237 should apply retroactively to convictions pre-dating the ADAA. The Supreme Court stated clearly in *St. Cyr* that we owe no *Chevron* deference to the BIA's rulings on questions of retroactivity, because we owe such deference only where a statute is ambiguous, and, under *Landgraf v. USI Film Products*, 511 U.S. 244, 264, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), a statute ambiguous as to retroactivity must be construed as "unambiguously prospective." *See St. Cyr*, 533 U.S. at 320 n. 45, 121 S.Ct. 2271 ("We only defer . . . to agency interpretations of statutes that, applying the normal tools of statutory construction, are ambiguous. Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve." (internal quotations and citations omitted)).

Second, the BIA initially will not even address the retroactivity question as a matter of first impression. Rather, because the BIA, like this Court, is required to follow *Bell* if it remains good law (and, as the BIA previously found, *Bell* is dispositive of petitioner's claim), the question the BIA will first have to answer is whether *Bell* remains good law or whether it has been overruled by *St. Cyr* (and whether we already answered this question in *Kuhali* ). Remanding to the BIA to tell us the meaning and vitality of our own precedent is, to put it mildly, odd. Moreover, I cannot fail to note the irony in our asking the BIA its

opinion of *Bell* given that in that case we rejected the BIA's reasoning and rested our decision on a ground never considered by the BIA. *See Bell*, 218 F.3d at 93–94 (rejecting BIA's interpretation of § 602(c) of the Immigration Act of 1990 and deciding on the basis of § 602(d) instead).

Thus, not only is the BIA's opinion not *necessary* for our jurisdictional determination, it is, with all due respect to the BIA, legally irrelevant. Nor is there any factual record which needs developing on this purely legal issue. Thus, any suggestion that remanding will "afford[ ] the parties and courts the benefit of the agency's expertise" or "[permit a] compil[ation of the] record which is adequate for judicial review," *ante* at 154, is simply unsupportable.

This leaves, as the sole possible justification for remand, the avoidance of "any premature interference with the agency's processes . . . ." *Id.* I would think that the agency, as represented before this Court by the United States Attorney, would be the proper party to concern itself with such "interference." The government, however, did not request that we remand so that the BIA could consider the effect of *St. Cyr*, and when asked at oral argument, counsel for the government specifically denied any desire for us to do so (as did counsel for petitioner). *Cf. Esposito v. INS*, 987 F.2d 108, 112 (2d Cir.1993) (noting the government's suggestion of a remand to allow BIA to consider issues of statutory interpretation on which it had not previously ruled). Moreover, the agency has, in its position in this case, already told us precisely what it thinks the effect of *St. Cyr* on *Bell* is, i.e., none whatsoever.[4] Thus, the possibility that the BIA will not adhere to its former ruling,

---

**4.** While the BIA exercises its independent judgment in a quasi-judicial capacity, its decisions are subject to plenary review and over-ruling by the Attorney General. *See* 8 C.F.R. § 3.1(h).

and that this petition will not return to us in precisely the same posture, seems to me remote in the extreme, thus unnecessarily delaying the resolution of an important, and purely legal, issue (and likely delaying the deportation proceedings of other similarly situated aggravated felons).

Because this slim reed does not, to my mind, warrant choosing a course of doubtful propriety, I would choose to decide the jurisdictional question now. Because the majority has decided to vacate and remand instead of addressing the question of our jurisdiction directly, I respectfully dissent.