**Gregory GELMAN, Petitioner,**

v.

**John ASHCROFT, United States Attorney General, Respondent.**

**No. 03–4463.**

United States Court of Appeals, Second Circuit.

Argued May 11, 2004.

Decided June 17, 2004.

---

Dorothy J. Spenner, New York City (Mark S. Cheffo, Beverly A. Farrell, New York City, of counsel), for Petitioner.

Michael R. Holden, Assistant United States Attorney, Southern District of New York, New York City (David N. Kelley, United States Attorney, Meredith E. Kotler, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Respondent.

Before: FEINBERG, MESKILL and CABRANES, Circuit Judges.

MESKILL, Circuit Judge.

Gregory Gelman petitions for review of a decision of the Board of Immigration Appeals (BIA). The BIA determined that Gelman was removable as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted in 1988 of arson in the first degree. As a consequence, the BIA dismissed Gelman's appeal from an order of removal issued by an immigration judge (IJ).

Gelman's petition requires us to address whether section 602(d) of the Immigration Act of 1990 (IMMAct), Pub.L. No. 101–649, 104 Stat. 4978, 5082 (1990), permits the deportation of an alien pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(3), as amended, where he has been convicted of an aggravated felony prior to November 18, 1988, and has been charged with deportation after March 1, 1991. Several years ago, in *Bell v. Reno*, 218 F.3d 86 (2d Cir.2000), we answered that question in the affirmative. We held that section 602 of the IMMAct permits the deportation of an alien under those circumstances notwithstanding that the alien had been convicted of an aggravated felony prior to the enactment of the Anti–Drug Abuse Act of 1988 (ADAA), Pub.L. No. 100–690, 102 Stat. 4181 (1988), which first provided that such a conviction could serve as a basis for deportation.

Gelman argues that certain principles discussed by the Supreme Court in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), undercut *Bell*'s statutory analysis of IMMAct § 602(d). However, we have already reaffirmed *Bell*'s continuing vitality in *Kuhali v. Reno*, 266 F.3d 93 (2d Cir.2001). Accordingly, we agree with the BIA that Gelman's aggravated felony conviction renders him removable and dismiss his petition for lack of jurisdiction.

## BACKGROUND

Gelman, a native of the former Union of Soviet Socialist Republics, arrived in the United States in 1977 and became a lawful permanent resident in 1980. On May 2, 1988, Gelman was convicted, following a bench trial before the New York State Supreme Court, of, among other charges, arson in the first degree and sentenced to an indeterminate prison term of 15 years

to life.[1] *See People v. Gelman*, 658 N.Y.S.2d 872, 240 A.D.2d 181 (1st Dep't 1997), *aff'd*, 93 N.Y.2d 314, 690 N.Y.S.2d 520, 712 N.E.2d 686 (1999).

Gelman exhausted his direct appeals in May 1999, when the New York Court of Appeals affirmed his conviction. Several months later, in October 1999, the Immigration and Naturalization Service (INS) commenced removal proceedings against him.[2] The INS, relying on Gelman's arson conviction, charged him with removal pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that he was an alien convicted of an aggravated felony.

The IJ directed that Gelman be removed from the United States to Ukraine. Gelman appealed the IJ's decision to the BIA. The BIA, relying on *Bell v. Reno*, 218 F.3d 86 (2d Cir.2000), dismissed Gelman's appeal in May 2001 after finding, *inter alia*, that he was deportable notwithstanding the consideration that he had been convicted of an "aggravated felony" prior to the enactment of the ADAA.

When his ensuing petition for review came before us, Gelman conceded that *Bell* would be dispositive if it remained good law. However, he argued that *Bell*'s analysis with respect to IMMAct § 602(d)'s impact had been fatally undercut by the principles articulated by the Supreme Court in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), a decision issued by the Court *after* the BIA had already dismissed Gelman's appeal. Rather than addressing the merits of Gelman's

arguments where the BIA had not yet been permitted an opportunity to do so, we remanded the matter to the BIA "to consider in the first instance the impact" *St. Cyr* had "on the retroactive application of IMMAct § 602 in the instant case." *Gelman v. Ashcroft*, 298 F.3d 150, 151 (2d Cir.2002) (*Gelman I* ). In issuing that directive, we noted, among other things, that Gelman's case could well require the BIA to consider "Second Circuit precedent in light of recent Supreme Court case law— *i.e.*, whether *Bell* survived *St. Cyr* (and whether we answered this question in *Kuhali* [*v. Reno*, 266 F.3d 93 (2d Cir. 2001) ].)." *Id.* at 152 n. 1 (internal citations omitted).

On remand, the BIA concluded that it lacked the authority to determine whether *Bell* remained good law in light of *St. Cyr*. However, the BIA also indicated that our decision in *Kuhali v. Reno* appeared to reaffirm "*Bell*'s continuing vitality post-*St. Cyr*." Relying on *Kuhali*, the BIA once again found Gelman removable as an aggravated felon under section 237(a)(2)(A)(iii) and dismissed his appeal. This petition for review of that dismissal followed.

## DISCUSSION

### I. *Jurisdiction*

█ The INS initiated removal proceedings against Gelman after April 1, 1997, and, as a consequence, the permanent provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

---

**1.** The BIA erroneously indicated that Gelman was convicted of arson in 1987. This error appears to stem from the date on which the state court *found* Gelman to be guilty after a bench trial. The court found him guilty of arson in the first degree in 1987 but entered the verdict convicting him of the crime on May 2, 1988. Under New York law, a conviction occurs, *inter alia*, upon the "entry" of a "verdict." N.Y.Crim. Proc. Law § 1.20(13).

**2.** On March 1, 2003, the INS was reconstituted as the Bureau of Immigration and Customs Enforcement, a part of the Department of Homeland Security. Because the BIA and IJ rulings implicated in the instant petition for review were issued when the agency was still the INS, we will refer to the agency as the INS throughout the opinion. *See Brissett v. Ashcroft*, 363 F.3d 130, 132 n. 1 (2d Cir. 2004).

(IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546 (1996), govern our review of his petition. *See Kuhali,* 266 F.3d at 99. Section 242(a)(2)(C) of the INA, 8 U.S.C. § 1252(a)(2)(C), precludes us from reviewing any final removal order against an alien subject to removal as an aggravated felon pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii). *See Gelman I,* 298 F.3d at 151.

Despite the imposition of this jurisdictional bar, we continue to have jurisdiction to determine whether the bar applies in the first instance. *Id.* In other words, we may review whether a petitioner satisfies the jurisdictional facts on which the jurisdictional bar is predicated. *Bell,* 218 F.3d at 89. As we explained when we addressed Gelman's earlier petition for review of the BIA's May 2001 decision, the application of the jurisdictional bar to Gelman is premised on whether Gelman is deportable as an alien convicted of an aggravated felony pursuant to INA § 237(a)(2)(A)(iii). *Gelman I,* 298 F.3d at 151. In evaluating whether we have jurisdiction to review the final removal order issued against Gelman, we must "consider whether Gelman's aggravated felony renders him deportable, which in turn depends upon whether IMMAct § 602 operates retroactively." *Id.*

## II. *Gelman is Subject to Removal as an Alien Convicted of an Aggravated Felony*

The resolution of Gelman's petition hinges on whether our earlier decision in *Bell v. Reno* remains good law. *Bell* concerned an alien charged with removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. Bell was convicted of an aggravated felony in 1985. In his petition, Bell argued that he could not be deported because his aggravated felony conviction predated the ADAA.

Prior to the enactment of the ADAA on November 18, 1988, the INA did not provide for the deportation of aliens convicted of an aggravated felony. Section 7342 of the ADAA first introduced the term "aggravated felony" into the lexicon of immigration law. *See* 102 Stat. at 4469–70. In turn, section 7344(a) of the ADAA amended the INA such that an alien's conviction for an aggravated felony constituted a ground for deportation. *See id.* at 4470–71. However, section 7344(b) of the ADAA provided that it applied "to any alien who has been convicted, *on or after* the date of the enactment of t[he] [ADAA], of an aggravated felony." *See id.* at 4471 (emphasis added). Bell relied on ADAA § 7344(b) in an effort to avert deportation on the ground of his aggravated felony conviction.

We agreed with Bell that, pursuant to the ADAA, "an alien was [originally] subject … to deportation as an aggravated felon *only* if convicted after November 1, 1988." *Bell,* 218 F.3d at 88 (emphasis added). However, because we held that section 602(d) of the IMMAct of 1990 rendered ADAA § 7344(b) "obsolete," we refused to grant his petition. *Id.* at 94.

The IMMAct of 1990 broadened the definition of what constituted an "aggravated felony." *See* Pub.L. No. 101–649, § 501, 104 Stat. 4978, 5048 (1990). In addition, IMMAct § 602, entitled "Revision of Grounds for Deportation," restructured the INA's grounds for deportation by consolidating a variety of similar deportable offenses. As part of these structural alterations, section 602(a) amended the INA by redesignating the aggravated felony ground, which the ADAA had previously designated as section 241(a)(4)(B) of the INA, *see* 102 Stat. at 4470–71, as section 241(a)(2)(A)(iii). 104 Stat. at 5077, 5080. In *Bell,* we noted that section 602(d) of the IMMAct provided that " '[t]he amend-

ments made by [§ 602] . . . shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991.'" 218 F.3d at 94 (quoting IMMAct § 602(d), 104 Stat. at 5082). We continued on to explain that "[s]ection 602(a)'s redesignation of the aggravated felony ground from INA § 241(4)(B) to INA § 241(a)(2)(A)(iii) is an 'amendment[]' within the meaning of [section] 602(d)." *Id.* As a consequence, we held that "ADAA § 7344(b) [did] not survive this provision" and that an alien convicted of an aggravated felony could be deported if he was given notice of his deportation proceeding *after* March 1, 1991, notwithstanding that his aggravated felony conviction predated the enactment of the ADAA. *Id.* at 94, 96.

 Gelman concedes that *Bell* would be dispositive of the matter before us if *Bell* remains good law. As Gelman acknowledges, the "dispositive facts in his case are virtually identical to those in *Bell.*" Nevertheless, his petition, in effect, asks us to overrule *Bell.* "[A]s a general rule," however, "one panel of this Court cannot overrule a prior decision of another panel." *Union of Needletrades, Indus. and Textile Employees v. United States I.N.S.,* 336 F.3d 200, 210 (2d Cir.2003). We are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson,* 361 F.3d 717, 732 (2d Cir.2004). We do, however, recognize an exception to this general rule "where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Union of Needletrades, Industrial and Textile Employees, AFL–CIO, CLC,* 336 F.3d at 210. Here, Gelman argues that the manner in which the Supreme Court analyzed sections 304 and 309(c)(1) of IIRIRA in *INS v. St. Cyr* undercuts the *Bell* panel's earlier statutory analysis of IMMAct § 602(d). In short, he

suggests that *St. Cyr* casts doubt on *Bell* and asks us to revisit the precedent set therein.

Gelman's arguments in this respect, however, run afoul of *Kuhali v. Reno,* a decision issued by another panel of our Court after the Supreme Court decided *St. Cyr.* In *Kuhali,* the petitioner, relying on ADAA § 7344(b), argued that the 1996 IIRIRA amendments to the INA's definition of "aggravated felony" should not be construed to apply retroactively to his 1980 conviction. One of the reasons we gave for rejecting that argument was that in *Bell,* "we . . . already explained in considerable detail that [ADAA § 7344(b)] was rendered obsolete by other intervening congressional enactments." *Kuhali,* 266 F.3d at 111. We then broadly indicated that *Bell* was in "accord" with *St. Cyr. See id.* Accordingly, although the petitioner in *Kuhali* may not have made the exact same argument pressed in the instant case, *Kuhali* reaffirmed that section 602(d) of the IMMAct rendered ADAA § 7344(b) "obsolete" and that aliens convicted of an aggravated felony are subject to removal even if their convictions predated the enactment of the ADAA. Indeed, the *Kuhali* Court had to address that issue because the petitioner challenged his deportability under the aggravated felony ground, *id.* at 110, and he was convicted in 1980, *id.* at 98. We are bound by the *Kuhali* panel's decision, and *Kuhali* forecloses Gelman's arguments with respect to the precedential value of *Bell.*

In sum, in accordance with *Kuhali,* we continue to be bound by *Bell.* We therefore hold, as did the *Bell* panel with respect to the petitioner in that case, that IMMAct § 602(d) permits the INS to remove Gelman pursuant to INA § 237(a)(2)(A)(iii) because he was convicted of an aggravated felony and he was charged with deportation long after March 1, 1991. The INS

may deport Gelman even though his aggravated felony conviction predates the enactment of the ADAA.

## CONCLUSION

 Because Gelman is subject to removal as an alien convicted of an aggravated felony, we lack jurisdiction to review his petition. We therefore dismiss the petition.